UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **JENNIFER CLEMMONS,** | ) CASE NO: 6:25-cv-00395 |
| Plaintiff, | ) JUDGE: |
| v. | ) **COMPLAINT** |
| **CORNERSTONE CAREGIVING, LLC,** | ) |
| Defendant. | ) |

Named Plaintiff Jennifer Clemmons, through counsel, for her Complaint against Defendant Cornerstone Caregiving, LLC, states and alleges as follows:

## INTRODUCTION

1. This case challenges Defendant's timekeeping and pay practices by which they willfully violated their employees' rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2. Named Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Named Plaintiff brings this case on behalf of herself and other "similarly-situated" persons who may join the case pursuant to §216(b) (the "Potential Opt-Ins"). Her consent form is attached hereto as Exhibit 1, as are the consent forms of Michaela Young, Siena Cook, and Amanda Carter.

3. The allegations made herein are based on the personal knowledge of Named Plaintiff and the opt-ins, and are made on information and belief as to the acts of others.

1

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Named Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because Defendant has conducted continuous business within the territorial jurisdiction of this Court and a substantial part of the events or omissions giving rise to Named Plaintiff's claims occurred in this district and division.

## PARTIES

6. Defendant Cornerstone Caregiving, LLC is a limited liability company that is headquartered in Waco, Texas.

7. Cornerstone Caregiving's owners are Michael Hillman and Ryan Gibson.

8. Cornerstone Caregiving operates affiliated home health LLCs throughout the country, all also owned by Michael Hillman and Ryan Gibson.

9. Named Plaintiff Jennifer Clemmons is a citizen of the United States and an Arkansas resident and, as described below, was an employee of Defendant, working as a home health aide for Defendant's affiliate in Arkansas.

10. Defendant Cornerstone Caregiving maintained control, oversight, and direction over Named Plaintiff and other similarly situated employees, including through the promulgation and enforcement of policies affecting the payment of wages and overtime.

11. At all times relevant, Defendant benefitted from the work performed by Named Plaintiff and others similarly situated.

12. Defendant, operates and controls an enterprise and employs employees engaged in commerce or in the production of goods for commerce, or it has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce

by any person, and Defendant has had an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level) during each of the three (3) years prior to the filing of this complaint up to and including the present year.

## FACTUAL ALLEGATIONS

13. Defendant operates a common business enterprise through its affiliates.

14. All of Defendant's affiliates are subject to centralized control of labor relations, common management, and common ownership/financial control.

15. By way of example, all affiliates, including Named Plaintiff's W-2 employer, are owned and operated by Cornerstone Caregiving's owners, Michael Hillman and Ryan Gibson.

16. By further way of example, Cornerstone Caregiving created, promulgated, and enforced the employee handbook governing the terms of employment of Named Plaintiff and all similarly situated employees.

17. By further way of example, Cornerstone Caregiving set the payroll rules dictating the standards and rates at which Named Plaintiff and all similarly situated employees were paid.

18. By further way of example, Cornerstone Caregiving amended the travel time pay policy for employees at all affiliated entities in January 2025.

19. Thus, Cornerstone Caregiving jointly employs, along with its affiliated entities, Named Plaintiff and all similarly situated persons, and operates a single integrated enterprise with its affiliates.

20. Defendant Cornerstone Caregiving was an "employer" of Named Plaintiff, the Opt-Ins, and all Potential Opt-Ins pursuant to 29 U.S.C. § 203(d) and O.R.C. §4111.03(D)(2) in that it "act[ed] directly or indirectly in the interest of an employer… in relation to employees."

### Defendant's Employment of Plaintiff, the Opt-Ins, and the Potential Opt-Ins

21. Named Plaintiff was employed by Defendant from April 2021 through December 2024 as a home health aide.

22. Named Plaintiff was an hourly employee, and was non-exempt from overtime pay.

23. Named Plaintiff worked over forty hours per workweek in most weeks of her tenure working for Defendant.

### Defendant's Failure to Pay for All Hours Worked

24. The FLSA required Defendant to pay its non-exempt employees for all hours they were "suffer[ed] or … permit[ted] to work." 29 U.S.C. § 203(g).

25. Moreover, "travel from job site to job site during the workday, must be counted as hours worked." 29 C.F.R. § 785.38.

26. As home health aides, Named Plaintiff, the Opt-Ins, and the Potential Opt-Ins, and routinely travel from patient-to-patient within a workday.

27. By companywide policy, at all times relevant prior to January of 2025, Defendant did not pay Named Plaintiff, the Opt-Ins, and the Potential Opt-Ins for travel from patient-to-patient during the workday.

28. A companywide email dated December 30, 2024 (depicted below) informed employees of the "Exciting Update" that they would now be compensated – as the law has required for almost a century – for intraday travel:

29. As Named Plaintiff's patient-care schedule regularly exceeded 40 hours per workweek exclusive of the intraday travel, Defendant's pre-January 2025 policy of failing to pay for intraday travel deprived Named Plaintiff, the Opt-Ins, and similarly situated Potential Opt-Ins of overtime pay due.[1]

### Defendant's Failure to
### Pay Required Overtime Compensation at the Legally-Mandated Rate

---

[1] This statement is not a concession that violations did not occur after this date.

30. The FLSA requires covered employers to pay non-exempt employees overtime compensation at one-and-one-half times their "regular rate" for all hours worked in excess of forty hours per workweek. 29 U.S.C. § 207.

31. Named Plaintiff, the Opt-Ins, and the Potential Opt-Ins, were all non- exempt from overtime pay under 29 U.S.C. § 207.

32. Named Plaintiff, the Opt-Ins, and the Potential Opt-Ins frequently worked more forty hours per week, entitling them to overtime compensation under the FLSA.

33. Unless excludable under 29 U.S.C. § 207(e), employers must include "all remuneration for employment paid to, or on behalf of, the employee" in calculating an employee's regular rate of pay.

34. Defendant systematically failed to include all forms of compensation in calculating the regular rate of pay and overtime premium calculations for Named Plaintiff, the Opt-Ins, and the Potential Opt-Ins.

35. By way of example, Named Plaintiff, the Opt-Ins, and the Potential Opt-Ins all received an hourly rate of pay for time spent with patients and also regularly received non-discretionary bonuses for certain services rendered, such as picking up extra shifts.

36. Defendant induced Named Plaintiff, the Opt-Ins, and the Potential Opt-Ins to work extra shifts by offering extra bonus pay for that work.

37. Defendant engaged in a uniform pattern, practice, or policy of violating the FLSA with respect to Named Plaintiff, the Opt-Ins, and the Potential Opt-Ins by failing to include the bonuses in calculating their regular rate of pay as required by 29 U.S.C. § 207.

### The Willfulness of Defendant's Violations

38. Defendant knew that Named Plaintiff, the Opt-Ins, and the Potential Opt-Ins were entitled to compensation for all hours worked and overtime compensation for hours over 40 in a

5

workweek under both federal law, or otherwise acted in reckless disregard for whether they were so entitled.

39. Defendant intentionally and willfully circumvented the requirements of the FLSA. Defendant designed its timekeeping and payroll policies and practices in an attempt to reduce employees' paid hours and circumvent wage-and-hour laws.

40. For instance, Defendant knew, and in fact required, that employees regularly and routinely traveling during their workdays, but intentionally designed their compensation structure to deprive employees of that pay until at least January 2025.

41. Likewise, Defendant was patently aware of its obligation to pay overtime based upon a correctly calculated regular rate of pay.

42. In fact, Defendant partially instituted a weighted overtime pay calculation, which accounted for some of employees' requisite remuneration, but excluded portions – like shift pick-up bonuses, which clearly must be included.

43. In order to institute that practice, Defendant knew that they had to conduct a weekly calculation to determine employees' regular rate of pay, and simply chose not to include clearly includable portions of employees' pay into the regular rate calculation.

## COLLECTIVE ACTION ALLEGATIONS

44. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

45. Named Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability "prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of themselves and other employees similarly situated. "

46. The Potential Opt-Ins who are "similarly situated" to Named Plaintiff with respect

to Defendant's FLSA violations consist of:

> All Cornerstone Caregiving home health aides outside of Ohio who worked one or more workweeks exceeding forty hours during the period three years preceding the commencement of this action to the present.

47. Such persons are "similarly situated" with respect to Defendant's FLSA violations in that all were subject to and injured by Defendant's unlawful timekeeping and payroll practices, and all have the same claims against Defendant for unpaid overtime compensation, as well as for liquidated damages, attorneys' fees, and costs.

48. FLSA notice pursuant to 29 U.S.C. §216(b) is proper and necessary, and all such persons were sent a Court-authorized notice informing them of the pendency of the action and giving them the opportunity to "opt in."

49. Upon information and belief, the number of similarly-situated persons exceeds 500 persons.

## COUNT ONE
### (FLSA Overtime Violations)

50. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

51. Named Plaintiff bring this claim for violation of the FLSA's overtime provisions on behalf of herself and the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. §216(b).

52. The FLSA required Defendant to pay their non-exempt employees overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. 778.117.

53. Defendant failed to pay overtime compensation to Named Plaintiff and the Potential Opt-Ins for all hours worked in excess of forty hours in a workweek. As more fully described above, Defendant, in violation of law, required Named Plaintiff and the Potential Opt-Ins to perform unpaid work off-the-clock, including intraday travel, and failed to pay Named Plaintiff

and the Potential Opt-Ins' overtime hours at one-and-one-half their regular rate of pay.

54. By engaging in those practices, Defendant willfully violated the FLSA and regulations thereunder that have the force and effect of law.

55. As a result of Defendant's violations of the FLSA, Named Plaintiff and the Potential Opt-Ins were injured in that they did not receive overtime compensation due to them pursuant to the FLSA. Section 216(b) of the FLSA entitles them to an award of unpaid overtime compensation, as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## **PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiff respectfully requests that the Court:

A. Direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in pursuant to 29 U.S.C. § 216(b);

B. Enter judgment against Defendant and in favor of Named Plaintiff and the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b);

C. Award compensatory damages to Named Plaintiff and the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b) in the amount of their unpaid wages and commissions, as well as liquidated damages in an equal amount; and

D. Award Named Plaintiff her costs and attorneys' fees incurred in prosecuting this action and such further relief as the Court deems equitable and just.

Respectfully submitted,

*s/ Scott D. Perlmuter*
Scott D. Perlmuter (OH Bar 0082856)
**TITTLE & PERLMUTER**
4106 Bridge Avenue
Cleveland, OH 44113
216-308-1522
Fax: 888-604-9299
scott@tittlelawfirm.com

*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Scott D. Perlmuter*
Scott D. Perlmuter (0082856)